[No. 15756.   Department One,   July 15, 1920.]

ARCH D. BROWN, *Plaintiff*, v. HUNT & MOTTET COMPANY
et al., *Appellants*, NORTHWEST PEACE JUBILEE,
*Defendant*.[1]

RECEIVERS (40-1)—APPOINTMENT—EFFECT UPON LIENS. The appointment of a receiver does not affect the rights of parties to liens or prevent the filing of claims therefor.

MECHANICS' LIENS (40)—NECESSITY OF FILING CLAIMS—EXCUSES—APPOINTMENT OF RECEIVER. In view of Rem. Code, § 1134, providing that no mechanic's lien shall "exist" unless notice is filed in the auditor's office, the failure to file a lien upon structures of a temporary nature, constructed upon city streets, is not excused by the fact that, before the time for filing had expired; a receiver was appointed and sold the structures under order of court; and no preference right can be claimed upon the fund derived from the receiver's sale without first perfecting the lien in the manner required by the statutes.

Appeal from an order of the superior court for Pierce county, Clifford, J., entered October 20, 1919, denying a preference right to payment of claims of materialmen from funds derived from a receiver's sale, after a hearing before the court. Affirmed.

*W. W. Keyes* and *Burkey, O'Brien & Burkey,* for appellants.

*Stiles & Latcham,* for respondent.

MITCHELL, J.—This is an appeal from an order denying to Hunt & Mottet Company, a corporation, and to the City Lumber Agency, a copartnership, preference in payment claimed by them out of funds derived by the receiver of the Northwest Peace Jubilee, an insolvent corporation, from the sale of buildings and structures erected by that corporation upon cer-

[1]Reported in 191 Pac. 860.

tain streets and alleys in the city of Tacoma for the purpose of conducting a public celebration during the week of July 4, 1919.

The facts are not in dispute and are substantially as follows: The Northwest Peace Jubilee was organized under the laws of this state in April, 1919, as a corporation, not for carrying on trade or business for profit, but as expressed in its articles of incorporation, for the purpose of

"putting on and staging of the Northwest Peace Jubilee and Fourth of July celebration in the city of Tacoma, Washington, and such other attractions and celebrations as in the opinion of the majority of all concerned shall best promote the interests of the city and community, and especially for the purpose of raising funds for the Tacoma Sailors and Soldiers auditorium to be built by the citizens of the city of Tacoma in memory of the soldiers and sailors of the northwest, living or dead, who served our country in defending us, our homes and the world civilization in the late world war."

Upon its organization, it procured from the city council of Tacoma permission to exclusively occupy portions of certain designated streets and alleys in the city with wooden structures during eight days, commencing June 30 and ending July 7, 1919, to enable it to carry on the celebration, which included various shows, exhibitions and amusements. In giving its permission, the city council required that, immediately after July 7, all fences and other structures should be removed, of which permission and condition the appellants had no actual notice.

Pursuant to the plans of the corporation and permission given by the city, certain buildings, booths and fences were erected by the corporation upon the streets and alleys designated. Upon request of the corporation, the City Lumber Company and the Hunt & Mottet

Company, during the month of June, furnished material that was used in the buildings and fences, for which they have not been fully paid. The only sources which the corporation had for the payment of its obligations was its receipts for admission to the show grounds and other fees and charges collected from exhibitors, and those being insufficient, it became insolvent and, at the suit of a creditor, a temporary receiver was appointed on July 9, 1919, and it appears a permanent receiver was appointed on July 16, 1919.

In the month of July the receiver, under direction of the court, sold the structures and fencing for $1,682.75 (greater than appellants' two claims) to sundry persons, who tore down and removed them from the streets and alleys. The receiver has on hand belonging to the insolvent estate more than enough money to pay appellants' claims in full. Neither of the appellants filed in the office of the auditor of Pierce county any claim of lien upon the structures and buildings, but each did file its claim with the receiver within ninety days after the cessation of the delivery of the material furnished by it, claiming a preference right out of the funds realized from the sale of the buildings and structures.

The lands upon which the structures were erected were parts of the streets of Tacoma, upon which no lien could be asserted, but it was otherwise with the structures, under § 1146, Rem. Code, which provides:

"When, for any reason the title or interest in the land, upon which the property subject to the lien is situated cannot be subjected to the lien, the court may order the sale and removal from the land of the property subject to the lien to satisfy the lien."

It is the contention of appellants that the court, through its receiver, having sold the buildings to per-

sons who tore them down in order to remove the material, within the ninety days in which appellants were entitled to file their claims with the county auditor, entitled them thereafter, if within the statutory period of ninety days, to file their claims with the receiver against the fund derived from the sale of the buildings, with the like effect of priority of payment out of that fund as if their claims had been filed with the county auditor prior to the appointment of a receiver.

Upon the subject of liens of mechanics and materialmen, § 1134, Rem. Code, provides:

"No lien created by this chapter shall exist, and no action to enforce the same shall be maintained, unless within ninety days from the date of the cessation of the performance of such labor or of the furnishing of such materials, a claim for such lien shall be filed for record as hereinafter provided, in the office of the county auditor of the county in which the property, or some part thereof to be affected thereby, is situated."

The right of the lien being statutory, it is apparent, by the very terms of the law, that it shall not exist unless, within ninety days after the cessation of the furnishing of the material, a claim shall be filed for record with the county auditor, and hence in the present case no lien ever did exist. But, as already stated, it is claimed that appellants' right of ninety days' time in which to file their claims with the county auditor having been intercepted by the court and its receiver's sale, "there was nothing for claimants to file against, other than the fund in the hands of the court realized from the sale of the structures," and that their priority of payment should be protected by the course they have taken. Appellants cite *Central Trust Co. v. Texas etc. R. Co.*, 23 Fed. 673, where, in a short opinion delivered orally, it was said:

"Where parties are entitled to a lien, and can secure it by certain proceedings under the statutes of the state, they are not required to go to the expense of such proceedings, but this court will treat it as though all needful steps had been taken to establish the lien."

The lien law of Missouri under consideration in that case did not contain any prohibitory language such as is found in our statute, and in addition, while the opinion is not clear upon the subject, it appears that the court in a receivership case was but approving the master's action in allowing a preference at a date when if disallowed the claimant yet had time to file his notice of claim within the time provided by statute upon property still in existence upon which the material had been furnished.

Next, the case of *Commonwealth Roofing Co. v. North American Trust Co.*, 135 Fed. 984, is relied on by appellants. It was a case under the New Hampshire statute. The statute provided that the furnishing of material *ipso facto* gave the lien, wherefrom the lienor did nothing to enforce his rights until and except by attachment proceedings within a specified time. Prior to the expiration of the time within which attachment proceedings might have been had, a receiver was appointed, who took charge of the property, and the court held the proper remedy of the lienor to protect his priority was in the receivership proceedings, under the rule that the appointment of a receiver does not divest the property of prior existing liens, but affects them only in the manner and time of their enforcement. It was a case in which "there were existing, completed liens on April 20, 1903, when the receiver was appointed." In the opinion it was remarked:

"It should be observed that the statute which we have quoted makes no requirement, as do the statutes of some states, to the effect that giving or filing a

notice is a condition precedent to the creation of a lien. What might be the effect of such a requirement we have no occasion to consider.''

The case of *Berwind-White Coal Mining Co. v. Metropolitan S. S. Co.*, 166 Fed. 782, cited by appellants, was a case of a maritime lien created under a statute of New Jersey, which provided for a completed lien upon any ship or vessel, her tackle, etc., simply upon the doing of any work or the furnishing of material or supplies for the building, repairing, fitting, furnishing or equipping such ship or vessel, and providing the lien should continue until paid.

The cases of *Totten & Hogg Iron etc. Co. v. Muncie Nail Co.*, 148 Ind. 372, 47 N. E. 703, and *Link Belt Machinery Co. v. Hughes*, 174 Ill. 155, 51 N. E. 179, cited by appellants, simply hold as stated in the first of those cases:

''If appellant had acquired a lien upon the mill and other property of appellee, such lien could not be lost by the subsequent appointment of the receiver.''

But such cases are not in point here where no lien had been acquired, or, as our statute puts it, ''existed,'' at the time of the appointment of the receiver. The only authority found for the lien in this state is contained in the statutes; and in order to entitle one to the lien at all, the same must be perfected according to the statute. ''The appointment of a receiver does not alter or affect the rights of the parties to property, or give or take from them any liens they have acquired or are entitled to.'' *Withrow Lumber Co. v. Glasgow Investment Co.*, 42 C. C. A. 61, 101 Fed. 863, and cases cited. It in no way prevents one from filing his claim of lien in the office of the county auditor. It only changes the procedure and possibly postpones the collection.

In the present case, appellants' loss of priority of payment out of the insolvent estate is traceable to neglect to take care of themselves. The losses they suffer are those which ordinary care would have prevented. Lack of actual knowledge of the condition imposed by the city that the structures on the streets should be removed immediately after July 7 is not so important, for, manifestly, inquiry of the officers of the corporation staging the celebration, or inquiry at the city hall, would have disclosed the condition, and besides, the very fact that the structures were built upon public streets of the city was a constant and lively suggestion that the occupancy was transient and fleeting. Nevertheless, appellants stood by, after ceasing to furnish material on June 30, until the court in protection of the rights of other creditors of the insolvent corporation appointed a temporary receiver on July 9, until a permanent receiver was appointed on July 16, through whom a sale was afterwards made by direction of the court, without having filed their claims in the auditor's office. The right of the city to the use of its streets and the rights of other creditors are not to be thus subordinated to the delay and will of appellants, who seek to have a court of equity relieve them from their failure to comply with the mandatory terms of the statute in the face of ample unimproved opportunity to do so. Appellants' situation, under the circumstances existing here, is analogous to that of one who, having the right and ample opportunity to take steps essential to create a lien, fails to do so because of the appointment of a receiver, through which proceedings alone he attempts to assert a priority, of which situation it was well said upon a rehearing in the case of *Withrow Lumber Co. v. Glasgow Investment Co.*, 45 C. C. A. 321, 106 Fed. 363:

''The court cannot, upon the theory of keeping alive a right to secure an inchoate or incipient lien, create one. . . . Petitioner's contention would lead to this result,—that it would be entirely unnecessary to file a mechanic's lien in any case where a suit was instituted involving the administration of property upon which a lien was sought to be established. This would be a dangerous precedent to set, and would be far-reaching in its effect.''

Upon the whole record, we are satisfied the judgment denying appellants any priority, but establishing their claims as those of common creditors, was right, and the judgment is affirmed.

HOLCOMB, C. J., PARKER, MACKINTOSH, and MAIN, JJ., concur.