[No. 49934-9.   En Banc.   June 14, 1984.]

HEWSON CONSTRUCTION, INC., *Appellant,* v. REINTREE CORPORATION, ET AL, *Respondents.*

*Cogdill, Deno & Millikan,* by *James E. Deno,* for appellant.

*Breskin, Robbins, Bastian & Cohen,* by *John C. Merkel* and *Arnold B. Robbins,* for respondent Reintree Corp.

*Casey, Pruzan & Kovarik,* by *John F. Kovarik,* for

respondent Quadrant Corp.

*Betts, Patterson & Mines, P.S.,* by *Ingrid W. Hansen* and *James D. Nelson,* for respondents Hillis Homes, et al.

*Raymond L. Davis,* for respondents Matheny, et al.

*Robert E. Ordal,* for respondents Bloomquist.

*Norm Maleng, Prosecuting Attorney,* and *Darrell L. Syferd, Senior Deputy,* for respondent State.

STAFFORD, J.—Appellant Hewson Construction, Inc. (Hewson) seeks to recover costs incurred in the installation of sidewalks in a King County subdivision. On summary judgment motions, the trial court ruled Hewson has no liens against the benefited property and no claim as a beneficiary of a plat subdivision performance bond. We affirm these rulings. The trial court further ruled Hewson may not remove the sidewalks. We reverse this ruling and hold Hewson may remove the sidewalks after first offering to sell them to King County.

Reintree Corporation (Reintree), a developer, recorded the plat, Reinwood Division No. 2, in King County on May 1, 1979. As a condition of plat approval, Reintree posted a performance bond for sidewalk construction. The bond was posted pursuant to RCW 58.17.130, which authorizes the County to allow developers to post performance bonds in lieu of actual construction of improvements required for plat approval.

After posting the bond and obtaining plat approval, Reintree began to sell lots. Subsequently, in the fall of 1979, Reintree contracted with Hewson for installation of sidewalks in the subdivision. When Hewson sought payment, Reintree defaulted. The sidewalks have not been completed in accordance with King County's requirements; consequently the County has neither accepted the sidewalks nor released the performance bond.

Having failed to obtain payment from Reintree, Hewson filed liens against lots in the subdivision. Hewson then

brought this action against Reintree, the developer; owners of lots in the subdivision; United Pacific Insurance Company, the bonding company; and King County. Hewson seeks to recover damages for Reintree's breach of contract, foreclose the liens, and recover as beneficiary of the bond.

Reintree is insolvent and defaulted. Judgment was entered against Reintree in the sum of $24,687.50.

The trial court resolved the remaining claims by summary judgment. The trial court ruled Reintree did not act as agent of the property owners in contracting with Hewson for construction of the sidewalks; therefore the liens against those subdivision lots were discharged. The trial court denied Hewson's claim for recovery on the bond, granting summary judgment in favor of the bonding company and King County.

The trial court initially ruled Hewson could remove the sidewalks pursuant to RCW 60.04.170, provided it first offered to sell the sidewalks to the County. In this original ruling, the trial court found the sidewalks could be removed without damaging the underlying real estate. Upon reconsideration, the removal order was reversed, the trial court concluding the sidewalks were public property, not subject to the removal provisions of RCW 60.04.170.

Hewson appealed. Division One of the Court of Appeals certified the appeal to this court and certification was accepted.

I

We first determine whether Hewson may foreclose its liens against the lots in the subdivision. Hewson contends Reintree acted as an agent of the property owners in contracting with Hewson for installation of the sidewalks. This action, Hewson asserts, subjects the owners' property to liens for sidewalk construction.

The lien statute, RCW 60.04.040, provides in pertinent part:

Any person who, at the request of the owner of any real property, *or his agent* . . . improves the same, or

any street or road in front of, or adjoining the same . . . has a lien upon such real property for the labor performed . . . the materials furnished, or the equipment supplied for such purposes.

(Italics ours.) Under this statute, if Reintree was an agent of the owners, Hewson has a lien against the owners' property for the costs of sidewalk installation.

An agency relationship may exist, either expressly or by implication, when one party acts at the instance of and, in some material degree, under the direction and control of another. *Matsumura v. Eilert,* 74 Wn.2d 362, 444 P.2d 806 (1968). Both the principal and agent must consent to the relationship. *Moss v. Vadman,* 77 Wn.2d 396, 463 P.2d 159 (1969). The burden of establishing the agency relationship rests upon Hewson, the party asserting its existence. *Moss v. Vadman, supra.*

In arguing that an agency relationship existed between the property owners and Reintree, Hewson relies primarily on cases involving leases and executory contracts of sale. Where a lease or executory contract requires the lessee or vendee to improve the property, the work done will support a lien upon the interest of the lessor or vendor. *E.g., Nelson v. Bailey,* 54 Wn.2d 161, 165, 338 P.2d 757, 73 A.L.R.2d 1400 (1959); *Newell v. Vervaeke,* 189 Wash. 144, 63 P.2d 488 (1937). A lien will attach, however, only if the lessee or vendee has an obligation under the contract, rather than a privilege, to make improvements. *Miles v. Bunn,* 173 Wash. 303, 305, 22 P.2d 985 (1933). By requiring that improvements be made, the owner grants power to the lessee or vendee to act on the owner's behalf and consents to the formation of a principal–agent relationship, assuming liability for acts of the agent.

Hewson argues Reintree had a legal obligation to install the sidewalks because, at the time of purchase, Reintree advised purchasers that the required improvements would be made. Thus, by analogy to the lease and executory contract cases, Reintree's obligation to install improvements gave Reintree express authority to act as agent of the

property owners.

We reject this argument. The lease and executory contract cases are inapposite. In those cases, an obligation was created in the first instance by the owner, who granted authority to the lessee or vendee to act as an agent. In contrast, the owners of lots in the Reinwood subdivision did not create Reintree's obligation to install sidewalks. Rather, Reintree had a preexisting duty to install the sidewalks as a condition of plat approval. By purchasing the property, the owners did not assume control over Reintree for purposes of sidewalk installation or establish any contractual relationship with Hewson. *Cf. McCombs Constr., Inc. v. Barnes,* 32 Wn. App. 70, 645 P.2d 1131 (1982). Hence, no express agency relationship existed between the lot owners and Reintree.

Reintree also cannot be said to have had implied authority to act as the owners' agent. This court has previously addressed the question of implied agency in a somewhat similar context. In *Fergusson v. Guy,* 151 Wash. 550, 276 P. 855 (1929), Guy Brothers hired a subcontractor to improve previously dedicated plats. The subcontractor sought to impose liens upon the adjoining property. This court held no implied agency relationship existed between Guy Brothers and the adjoining property owner. The adjoining property owner's notice of the work in progress and failure to protest the work did not create such an agency. The court stated:

> Under lien statutes like this which . . . require the work to be done at the request of the owner, his agent, contractor or subcontractor, even where the improvement is physically upon the property, it requires very clear proof of strong circumstances showing intimate relation between the owner and the making of the improvement to give rise to an implied agency . . .
>
> . . . [W]here the work consists of improving a public street in front of adjoining property, a work which is ordinarily done at the instance of public authorities, even a clearer case of implied agency must be shown to enable

those who do the work of such improvement to successfully uphold their claim of lien . . .

*Fergusson,* at 554.

In this case, as in *Fergusson,* there is no "intimate relation between the owner and the making of the improvement". Notice by the lot owners that improvements were being made is not sufficient to create liability. Nor does the existence of a contract for the sale of property between Reintree and the owners give rise to an agency by implication. Further, the mere fact that the owners' property is benefited by the sidewalk installation does not itself make the interest lienable. *W.T. Watts, Inc. v. Sherrer,* 89 Wn.2d 245, 571 P.2d 203 (1977).

No express or implied agency relationship existed between the owners and the developer; therefore the trial court properly discharged the liens.

## II

We next address Hewson's rights under the plat subdivision performance bond. As a condition of plat approval, Reintree posted a sidewalk bond pursuant to RCW 58.17-.130, which provides in part:

> Local regulations shall provide that in lieu of the completion of the actual construction of any required improvements prior to the approval of a final plat, the . . . county legislative body may accept a bond . . . providing for and securing to the municipality the actual construction and installation of such improvements . . . The municipality is hereby granted the power to enforce bonds authorized under this section by all appropriate legal and equitable remedies.

Under the bond, Reintree, as principal, and United Pacific Insurance Company, as surety, were bound to King County for payment of $42,000, the obligation to be void upon completion of sidewalks "in full compliance with the approved construction plans and profiles for [the] subdivision and in conformance with King County standard specifications, to the satisfaction of the Director, Department of Public Works".

Hewson seeks to recover as a third party beneficiary of this bond, arguing that the purpose of the bond is to insure performance of plat obligations, including complete payment for improvements. Further, Hewson contends the trial court should have entered mandamus directing the County to foreclose the bond and pay Hewson. We do not agree. The parties entering into this surety agreement did not contract for the benefit of Hewson. Hewson's argument fails to recognize the limited function of the plat obligation bond.

■ The nature of this bond can be discerned by examining the language of the statute authorizing the bond and the language of the bond itself. *See Paulsell v. Peters,* 9 Wn.2d 599, 115 P.2d 708 (1941). In construing the language in a statute, words are to be given their plain and ordinary meaning unless a contrary intent appears. *Strenge v. Clarke,* 89 Wn.2d 23, 569 P.2d 60 (1977). Likewise, if the language of a bond is plain and unambiguous, it is interpreted under general contract principles, giving the terms their usual meaning. *Joint Admin. Bd. of the Plumbing & Pipefitting Indus. v. Fallon,* 89 Wn.2d 90, 569 P.2d 1144 (1977).

■ Applying these rules of construction to the provisions of RCW 58.17.130 and the sidewalk bond, we conclude the bonding company has no obligation to pay Hewson for the cost of sidewalk construction. The statute and bond contain no language granting suppliers or laborers rights to payment, but rather assure only "actual construction and installation" of improvements. The bonding company guaranteed only performance of the obligation, not payment of installers. "No one incurs a liability to pay a debt or perform a duty for another unless he expressly agrees to be so bound". A Stearns, *Suretyship* § 2.2 (5th ed. 1951). Such express agreement to pay Hewson is absent here.

Our conclusion that this statutory performance bond does not benefit Hewson is in accord with the interpretation of similar statutes by courts of other jurisdictions.

*W.S. Dickey Clay Mfg. Co. v. Ferguson Inv. Co.*, 388 P.2d 300 (Okla. 1963); *Evola v. Wendt Constr. Co.*, 170 Cal. App. 2d 21, 338 P.2d 498 (1959); *see generally* 4 R. Anderson, *Zoning* § 23.46 (2d ed. 1977); E. Yokley, *Subdivisions* § 59, at 315 (2d ed. 1981). These courts and commentators have noted that plat improvement bonds run solely to the obligee–municipality. The Washington statute gives only the municipality power to enforce plat obligation bonds; thus contractors such as Hewson have no right of action to enforce these bonds.

This result also disposes of Hewson's contention that mandamus should be entered to force the County to foreclose the bond. Since Hewson is not a beneficiary of the bond, the trial court's denial of mandamus was proper.

Finally, Hewson argues that if it is denied compensation, the County may be liable for failure to obtain performance and payment bonds pursuant to RCW 39.08.015. This argument is without merit as RCW 39.08.015 applies when counties themselves contract for public works, not to platting obligations.

### III

Having decided that Hewson has no remedy under the lien or bond statutes, we next determine whether Hewson may remove the sidewalks. We find the removal remedy appropriate, provided Hewson first offers to sell the sidewalks to the County.

The removal statute, RCW 60.04.170, provides:

> When, for any reason the title or interest in the land, upon which the property subject to the lien is situated cannot be subjected to the lien, the court may order the sale and removal from the land of the property subject to the lien to satisfy the lien.

King County contends this statute is inapplicable because there is no "property subject to [a] lien". According to the County, the sidewalks are themselves public property, and no lien may attach to public property. *Hall & Olswang v. Aetna Cas. & Sur. Co.*, 161 Wash. 38, 47, 296 P. 162 (1931).

King County's assertion that the sidewalks are public property might have merit if approval of the plat constituted acceptance of a dedication of the sidewalks. Under RCW 58.17.020(3), an owner may dedicate land to the public in conjunction with developing a subdivision:

> The intention to dedicate shall be evidenced by the owner by the presentment for filing of a final plat or short plat showing the dedication thereon; and, the acceptance by the public shall be evidenced by the approval of such plat for filing by the appropriate governmental unit.

RCW 58.17.020(3). The County argues that when the plat was approved, the plat and all conditions, including the sidewalk installation, were part of the acceptance of the dedication of property. We do not agree.

■ Where a bond is posted to guarantee installation of required plat improvements, the governmental entity must accept the improvements subsequent to its approval of the plat. By approving the plat for filing, the governmental entity indicates its approval of the planned placement of improvements. However, the improvements themselves do not become public property until they have been completed in accordance with the governmental entity's standards and accepted as complete. Until that time, the developer remains responsible for the proper installation of the improvements. *Cf. Hoover v. County of Kern,* 118 Cal. App. 2d 139, 257 P.2d 492 (1953).

Under the bond, Reintree was required to construct sidewalks in conformance with County specifications "to the satisfaction of the Director, Department of Public Works". The affidavit of the Manager of the King County Department of Public Works reveals that the County has not yet released the bond because the sidewalks are not complete. Although the County has approved the plat, it has neither approved the sidewalks nor released the performance bond guaranteeing their proper installation. Thus, the sidewalks are not yet public property.

Since the sidewalks are not public property, they may be

subject to a lien, and the provisions of the removal statute are applicable. This statute has previously been applied where improvements were made upon public property at the instance of one owning less than a fee in the real estate. In *Brown v. Hunt & Mottet Co.,* 111 Wash. 564, 191 P. 860 (1920), Hunt & Mottet erected buildings on the streets of Tacoma at the request of Northwest Peace Jubilee, an organization formed to stage a Fourth of July celebration. Subsequently, the Jubilee became insolvent and the buildings were removed and sold. Hunt & Mottet sought to recover the funds from the sale. The court noted that while the lands upon which the structures were erected were parts of the streets of Tacoma, upon which no lien could be asserted, the structures themselves were subject to lien under Rem. Rev. Stat. § 1146, now codified as RCW 60.04-.170.

Similarly, when Reintree contracted with Hewson for installation of the sidewalks, the underlying property had been dedicated and accepted by the County. The sidewalks were therefore installed by Hewson at the instance of one owning less than a fee in the real estate. Under these circumstances, the removal statute is available to protect Hewson. *Columbia Lumber Co. v. Bothell Dairy Farm,* 174 Wash. 662, 25 P.2d 1037 (1933).

A trial court may exercise discretion in determining whether to authorize removal. In exercising its discretion, the trial court should consider whether the property subject to removal can be removed without injury to the underlying real estate. *Pioneer Sand & Gravel Co. v. Hedlund,* 178 Wash. 273, 34 P.2d 878 (1934). In its original order authorizing removal, the trial court made such a finding. The removal order was reversed only because the trial court determined the sidewalks were public property. Since the sidewalks are not public property, we hold Hewson may remove the sidewalks, providing it first offers to sell them to the County.

The decision of the trial court is affirmed in part and reversed in part. The cause is remanded for further pro-

ceedings consistent with this opinion.

WILLIAMS, C.J., and ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.