19 P.3d 474 (2001)
SAMUEL'S FURNITURE, INC., Jaffa Holdings, Inc., and City of Ferndale, Respondents,
v.
WASHINGTON STATE DEPARTMENT OF ECOLOGY, Appellant.
No. 46666-6-I.
Court of Appeals of Washington, Division 1.
March 12, 2001.
As Amended on Denial of Reconsideration April 17, 2001.
*475 Thomas Young, Assistant Attorney General, Olympia, for Appellant.
Kurt Denke, Seattle, Heather Wolfe, Langabeer, Tull & Lee, P.S., for Respondents.
Greg Overstreet, Timothy D. Ford, Counsel for Amicus Curiae Building Industry Association of Washington.
COLEMAN, J.
The Department of Ecology appeals from summary judgment in a declaratory judgment action initiated by Samuel's Furniture, Inc. Samuel's applied to the City of Ferndale for a grade and fill permit and a building permit in order to begin construction to expand its store. The City issued the permits after it reviewed its jurisdictional maps and determined that the site was outside shoreline jurisdiction. The Department insisted that the City's jurisdictional determination was incorrect and threatened to take enforcement against Samuel's if construction continued. Samuel's asked the Superior Court to decide whether the site is within shoreline jurisdiction. The Superior Court did not reach that issue, but instead, granted summary judgment in favor of Samuel's, holding that the Department was estopped from bringing enforcement action against Samuel's.
The central issue before this court is whether the Department is required to appeal the City's threshold jurisdictional determination under Washington's Land Use Petition Act (LUPA) or whether the Department has independent enforcement authority under the Shoreline Management Act (SMA). It has been established in Washington that a local government's threshold determination regarding shoreline jurisdiction is not determinative. Furthermore, the SMA explicitly empowers the Department to review local government land use decisions and to take enforcement action against persons violating the act. Therefore, we reverse the trial court and hold that the Department is not required to appeal threshold jurisdictional determinations under LUPA. This matter is remanded for a determination as to whether the Samuel's project is within shoreline jurisdiction.

FACTS
In 1990 and 1991, Samuel's Furniture built a store in Ferndale, Washington. Then in 1998, Samuel's began planning the construction of a second building near the existing store. Samuel's applied to the City for a grade and fill permit and mailed a completed State Environmental Policy Act checklist to *476 the Department. Soon after the permit was issued in August 1998, Samuel's began placing fill on the building site. Samuel's applied for and received a building permit in April 1999.
In evaluating Samuel's applications for both the grade and fill permit and the building permit, the City determined that because the City's shoreline management map showed the building site to be outside shoreline jurisdiction, no shoreline substantial development permit was required. Samuel's began construction on the new building in late July 1999. In August 1999, the Department contacted the City's shoreline administrator and informed him that the Samuel's project was within shoreline jurisdiction. In response, the City issued a stop work order. Later that week, however, the City reviewed the shoreline management map and withdrew the stop work order, again concluding that the property was outside shoreline jurisdiction. The Department insisted that the site was within shoreline jurisdiction and threatened to take enforcement action against Samuel's if work on the project resumed.
In January 2000, Samuel's filed an action in Whatcom County Superior Court requesting a declaration that the project site was outside shoreline jurisdiction. Three weeks later, Samuel's filed a motion for summary judgment, arguing (a) that the project site was outside shoreline jurisdiction and (b) that the Department was estopped from challenging the City's jurisdictional decision because it failed to appeal the decision under LUPA within the 21 day statutory time period. The Department was granted a continuance of approximately five weeks, and the hearing on Samuel's motion was set for April 21, 1999. On April 13, 1999, the Department filed a cross motion for summary judgment.
After hearing argument on the motions, the trial court granted Samuel's motion for summary judgment, ruling that the Department had waived its ability to challenge the City's jurisdictional decision by failing to appeal under LUPA and, as a result, was not entitled to take enforcement action against Samuel's. The trial court also held that the Department was bound by the City's jurisdictional determination under agency principles.

DISCUSSION
1. Applicability of LUPA
It is the Department's position that the SMA gives it independent authority to take enforcement action against persons suspected of violating the act even in cases where a local government has determined that the project at issue is outside shoreline jurisdiction. Samuel's argues that the SMA authorizes local governments to make threshold jurisdictional decisions, and that if the Department disagrees, it must appeal those decisions under LUPA.[1] In this case, Samuel's asserts that because the Department failed to initiate review of the City's decision under LUPA within the statutory time period, the Department is now estopped from taking enforcement action to halt the project.
The Shoreline Management Act of 1971 was drafted to protect the shorelines of the state and "to prevent the inherent harm in an uncoordinated and piecemeal development of the state's shorelines." RCW 90.58.020. Both local governments and the Department of Ecology are given responsibility under the act.
This chapter establishes a cooperative program of shoreline management between local government and the state. Local government shall have the primary responsibility for initiating the planning required by this chapter and administering the regulatory program consistent with the policy and provisions of this chapter. The department shall act primarily in a supportive and review capacity with an emphasis on providing assistance to local government and on insuring compliance with the policy and provisions of this chapter.
RCW 90.58.050. Under the SMA, the Department is directed to designate shorelines across the state for protection under the act. RCW 90.58.030(2)(f). Local governments are *477 then instructed to develop master programs for shorelines within their jurisdictions and submit them to the Department for approval. RCW 90.58.070, 090.
The SMA specifically provides that the Department (through the attorney general) and local governments are empowered to initiate court actions to ensure compliance with the act. "The attorney general or the attorney for the local government shall bring such injunctive, declaratory, or other actions as are necessary to insure that no uses are made of the shorelines of the state in conflict with the provisions and programs of this chapter, and to otherwise enforce the provisions of this chapter." RCW 90.58.210(1). Furthermore, chapter 173-27 WAC-which contains the shoreline management and permit procedures-states that local governments or the Department may take enforcement action "whenever a person has violated any provision of the act or any master program or other regulation promulgated under the act." WAC 173-27-260.
As indicated by RCW 90.58.050, local governments are charged with the responsibility for granting or denying development permits for projects on designated shorelines. See also RCW 90.58.140. Persons aggrieved by local governments' permit decisions may appeal such decisions to the shorelines hearings board. RCW 90.58.180. However, decisions by local governments that development permits are not necessary-i.e., that the project is outside shoreline jurisdiction-are not determinative as to whether such permits are required and are not reviewable by the shorelines hearing board. Toandos Peninsula Ass'n v. Jefferson County, 32 Wash.App. 473, 485, 648 P.2d 448 (1982).
Samuel's maintains that the proper path for an appeal from a local government's threshold jurisdictional decision is under LUPA. LUPA was enacted in 1995 "to reform the process for judicial review of land use decisions made by local jurisdictions, by establishing uniform, expedited appeal procedures and uniform criteria for reviewing such decisions, in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. LUPA was intended to be "the exclusive means of judicial review of land use decisions[.]" RCW 36.70C.030(1). Samuel's asserts that the City's jurisdictional decision was appealable under LUPA as "[a]n interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property[.]" RCW 36.70C.020(1)(b). Samuel's argues that the Department is now estopped from taking enforcement action because it failed to file a petition for review within 21 days of the land use decision as required by RCW 36.70C.040(3). Samuel's claims that the Department received sufficient notice of the proposed project through the SEPA checklist filed with the Department in conjunction with the issuance of the grade and fill permit.
Although Samuel's is correct in identifying LUPA as the proper route for appeals from most land use decisions, threshold jurisdictional determinations by local governments are not appealable decisions under LUPA. Under LUPA, a "land use decision" is defined as "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination[.]" RCW 36.70C.020(1). Because the SMA gives the Department responsibility for reviewing local government decisions to ensure compliance with the act, see RCW 90.58.050, the City's decision regarding the applicability of the act to the Samuel's project was not a final decision. The court in Toandos recognized this point: "The Attorney General and the prosecuting attorney of the county are specifically empowered and directed to initiate appropriate court actions to insure that `no uses are made of the shorelines of the state in conflict with the provisions and programs of this chapter, and to otherwise enforce the provisions of this chapter.'" Toandos, 32 Wash.App. at 485, 648 P.2d 448 (quoting RCW 90.58.210). Because the City's threshold jurisdictional determination was not a final decision, it was not appealable under LUPA.
Furthermore, the SMA and the accompanying WAC provisions clearly establish that the Department has independent enforcement authority. To require that the Department appeal local governments' threshold *478 jurisdictional decisions under LUPA would significantly impair its ability to ensure compliance with the act. Nothing in the SMA, the WAC, or the City's master plan requires that notice be given to the Department upon a determination by the City that a project is outside shoreline jurisdiction. Nor is there any requirement that the Department be notified of the City's decision to issue building or grade and fill permits. Although the Department does receive a State Environmental Policy Act checklist as part of the permit process, no information elicited by the checklist indicates whether shoreline jurisdiction could potentially be implicated.[2] Thus, as the Department alleges happened in this case, it is possible that development permits could be improperly issued for projects within shoreline jurisdiction that do not immediately come to the Department's attention. In such a case, it would be inconsistent with the Department's charge under the SMA to bar it from taking enforcement action because it failed to file a LUPA appeal within the 21-day window.
Because the City's jurisdictional determination was not appealable as a final decision under LUPA, and because the SMA and the accompanying WAC provisions clearly give the Department power to take enforcement action to ensure compliance with the act, the trial court's decision on this issue was in error.
2. Agency
In addition to the trial court's holding that the Department must appeal the City's jurisdictional decisions under LUPA, the court also held that under agency principles, the Department was bound by the City's determination.
An agency relationship requires the consent of both parties to an arrangement wherein the principal exercises control over the agent. Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wash.2d 935, 941, 845 P.2d 1331 (1993). The burden of establishing an agency relationship rests on the party asserting its existence. Hewson Constr., Inc. v. Reintree Corp., 101 Wash.2d 819, 823, 685 P.2d 1062 (1984).
As discussed above, the SMA governs the issuance of development permits on state shorelines. RCW 90.58.050 calls for a "cooperative program of shoreline management between local government and the state," with local government given primary responsibility for administration of the program and the Department charged with the responsibility for reviewing local government decisions to ensure compliance with the act. Nothing in the act suggests the existence of an agency relationship in which local government is subject to the Department's control. Similarly, by granting the Department independent enforcement authority, the act clearly does not envision an arrangement wherein the Department is bound by local government decisions.
Here, Samuel's relies on Orion Corp. v. State, 109 Wash.2d 621, 747 P.2d 1062 (1987) for the proposition that municipalities act as agents of the state under the SMA. In that case, Orion sued the state and Skagit County, claiming that excessive regulation of its property amounted to a regulatory taking. Before reaching the regulatory taking issue, the Supreme Court first determined which government (county or state) bore responsibility for the alleged taking. The court concluded that "[b]ecause the County acted at the instance of and, in some material degree, under the direction and control of the State, an agency relationship developed between the parties." Orion, 109 Wash.2d at 644, 747 P.2d 1062. The court held that as the principal in the relationship, the state should be held responsible for the alleged taking.
In this case, the City's jurisdictional decision was in no way directed or controlled by the Department. In fact, the City's decision was in effect an indication of its belief that the Department did not need to be involved in the permit process for the Samuel's project at all. Because there is nothing in the SMA implying the existence of an agency relationship between the Department and local *479 government, and because the City's decision in this case was not controlled by the Department, the trial court's decision on this issue was in error.
3. Administrative Finality
Amicus Building Industry Association of Washington (BIAW) argues that this court should invoke the common law doctrine of administrative finality to prevent the Department from taking enforcement action against Samuel's after it received building permits from the City and began construction. BIAW stresses the building industry's need for clear, final land use decisions upon which it can rely in order to begin construction and development projects.
BIAW correctly points out that Washington courts have recognized the need for a "body of cogent, workable rules upon which regulators and landowners alike can rely[.]" Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 5, 829 P.2d 765 (1992). However, BIAW incorrectly suggests that the Department's actions in this case are definitively in contravention of that principle. Throughout its brief, BIAW makes reference to the Department's action over and above "a previously approved final land use decision." Brief of Amicus Curiae, at 2. But as discussed above, the SMA gives the Department the responsibility for reviewing local land use decisions to ensure compliance with the act. RCW 90.58.050. To that extent, land use decisions by local governments are not final. Consistent with this analysis, a landowner has no vested rights under the SMA if the building permits he or she receives from a local government are issued in error. See Parker v. Dep't of Ecology, No. 82-41, Shorelines Hrg's Bd., Final Findings of Fact, Conclusions of Law & Order, at 5 (Apr. 11, 1983).
4. Department's Request for Jurisdictional Determination
The Department requests that this court make a final jurisdictional determination based upon the appellate record. However, because the trial court granted Samuel's motion for summary judgment without reaching the jurisdictional dispute, we are without the benefit of a fully developed record. In its reply brief, Samuel's indicates that there were factual issues regarding the applicability of shoreline jurisdiction that it did not raise at trial because the issue was never reached. Furthermore, aside from a summary concurrence with Samuel's arguments, the record contains no explanation of the City's position on this issue. For these reasons, we conclude that the jurisdictional issue is better suited for determination by the trial court.
The parties are at odds over the extent of the shoreline jurisdiction along the portion of the Nooksack River near the Samuel's project. Both parties agree that SMA jurisdiction extends to all "floodways and contiguous floodplain areas landward two hundred feet from such floodways" along the course of the Nooksack River. RCW 90.58.030(2)(f). In dispute, however, is the location of the floodway. Samuel's argues that the floodway is accurately represented on Ferndale's shoreline area designation map, which was approved by the Department as part of the City's shoreline master program. The map indicates that the floodway is generally contained within the banks of the river, with SMA jurisdiction thus extending 200 feet from the river along its course. The Department, on the other hand, argues that the Federal Emergency Management Agency (FEMA) floodway-which is much more extensive than the floodway as defined by Samuel's-serves as the definitive floodway for purposes of SMA jurisdiction in this case because it was adopted as part of Ferndale's flood regulation ordinance.
The SMA defines floodway at RCW 90.58.030(2)(g):
"Floodway" means those portions of the area of a river valley lying streamward from the outer limits of a watercourse upon which flood waters are carried during periods of flooding that occur with reasonable regularity, although not necessarily annually, said floodway being identified, under normal conditions, by changes in surface soil conditions or changes in types or quality of vegetative ground cover condition. The floodway shall not include those lands that can reasonably be expected *480 to be protected from flood waters by flood control devices maintained by or maintained under license from the federal government, the state, or a political subdivision of the state[.]
To this definition, WAC 173-22-030(5) adds: "The limit of the floodway is that which has been established in flood regulation ordinance maps or by a reasonable method which meets the objectives of the act[.]"
Because Ferndale has adopted the FEMA floodway for purposes of its flood regulation ordinance (as reflected in the City's flood regulation ordinance map), the Department argues that the FEMA floodway defines the extent of SMA jurisdiction. We must point out, however, that the validity of this argument hinges on whether the FEMA floodway satisfies the statutory criteria for a floodway as defined in RCW 90.58.030(2)(g); namely, whether it can be identified "under normal conditions, by changes in surface soil conditions or changes in types or quality of vegetative ground cover condition."[3]
For the reasons set forth in this opinion, we reverse the trial court's ruling regarding the applicability of LUPA and remand for a determination as to whether the Samuel's project is within shoreline jurisdiction.
KENNEDY, J., WEBSTER, J., concur.
NOTES
[1] Over its objection, the City of Ferndale was joined as a party in the trial court. The City filed a concurrence with Samuel's in this court, but submitted no substantive briefing. All references to positions held by Samuel's should thus be read to include the City's concurrence.
[2] The checklist asks, "Will the project require any work over, in, or adjacent to (within 200 feet) the described waters?"
[3] This analysis is necessary in order to maintain consistency between the WAC and the RCW. Otherwise, a situation could arise where a floodway met the criteria set forth in WAC 173-22-030(5) but not those in RCW 90.58.030(2)(g). In other words, a floodway could be established by virtue of a flood regulation ordinance map that did not meet the physical criteria for a floodway described in the SMA. Thus, to avoid such a conflict, the WAC provision should be read to implicitly require satisfaction of the RCW criteria.