**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| VIOREL MELNIK,<br><br>             Appellant,<br><br>      v.<br><br>AHO CONSTRUCTION I, INC, and<br>HOME BUILDERS ESCROW, LLC,<br><br>             Respondent. | No. 88156-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Viorel Melnik appeals the trial court's summary judgment order dismissing his claims for breach of the duty of good faith and fair dealing, and Consumer Protection Act (CPA), ch. 19.86 RCW, violations against Aho Construction I Inc. (Aho), and Home Builders Escrow, LLC (HBE), arising from a failed home sale. We affirm.

## I      FACTS

### A      Background

Aho is a Washington corporation with its principal place of business in Clark County. HBE is a Washington limited liability company with its principal place of business in Clark County. Melnik is from Ukraine and has lived in the United States since 2000.

On December 21, 2020, Melnik and Aho entered into an earnest money agreement (EMA) where Aho agreed to sell Melnik real property in Vancouver, Washington. At the time of the agreement, Aho was constructing a home on the property and the purchase price was $483,350. Melnik provided $14,500 as earnest money toward the purchase of the home. The EMA also provided that HBE shall be the escrow agent at closing. HBE and Aho are owned by the same people. This relationship was not disclosed to Melnik at the time he signed the EMA.

The EMA provided that:

Seller shall notify Buyer of scheduled completion date and/or occupancy permit issuance in writing through Buyer's lender and/or escrow company. Buyer understands that the closing transaction must record and fund no later than three days after the later of (i) the scheduled completion date or (ii) the occupancy issue date (the "Closing Date"). If Buyer fails to close by the Closing Date, then Seller may elect to terminate this transaction without any further notice and Earnest Money will be released to Seller as liquidated damages, and this Agreement shall terminate and become null and void.

This provision first provides that Aho must notify Melnik, through his lender, of the scheduled completion date and/or of the issuance of the occupancy permit. The EMA further provides:

If, however, Seller elects to extend the closing at Buyer's request, then a non-refundable carrying charge equal to $50.00 per day shall be charged for each additional day after the Closing Date and continue until the extension expires or closing, whichever comes first. Seller reserves the right to collect this carrying charge in advance for each 15-day extension that is granted. All extensions must be approved in writing by the Seller.

On June 10, 2021, Aho notified Melnik in writing that the closing date was scheduled for September 14, 2021. Aho sent a copy of the letter to Melnik's lender, Northpointe Bank, that same day. The letter provided that Melnik must contact his

lender immediately and inform them of the scheduled closing date. The letter also informed Melnik that he needed to stay in regular contact with his lender to ensure timely closing.

On September 7, 2021, Melnik attended an orientation at the home where he observed that work still needed to be completed. On September 8, 2021, Aho notified Melnik's lender, Geoff Kane at Northpointe Bank, in writing of the certificate of occupancy for the home.

On September 13, 2021, Amelia Autrey, an escrow manager at HBE, e-mailed Northpointe Bank to check on the status of the loan documents. Northpointe Bank responded that the loans would not be ready by September 14, 2021—which was the scheduled closing date per the June 2021 letter. Melnik was unable to close because of his failure to timely provide certain documents to his lender.

On September 21, 2021, Aho sent Melnik a letter that the EMA had been terminated, citing the time of the essence clause in the EMA. The letter included a refund check of his earnest money deposit.

According to Melnik, on September 24, 2021, he drove to Aho's office and met with Dallas Aho and explained that he could switch to a different lender to close the transaction. Melnik testified that Dallas agreed and permitted an extension through September 30, 2021. Melnik stated Dallas told him not to deposit the refund of his earnest money.

According to Melnik, based on that extension, he contacted hard money lender Eric Larson to try to obtain funding before September 30. On September 27, 2021, Larson told Melnik that the transaction may not go through because Melnik's wife in

Ukraine needed to sign a quitclaim deed. There was not enough time for Melnik's wife to get to the U.S. embassy in Ukraine.

The home ultimately sold to a different buyer for over $100,000 more than Melnik had contracted to pay.

### B     Procedural History

Melnik sued both Aho and HBE asserting claims for the beach of the duty of good faith and fair dealing, and violations of the CPA.

Aho and HBE both moved for summary judgment. Aho argued that it lawfully terminated the EMA on September 21, 2021, due to Melnik's inability to timely fund the purchase. Aho argued that once the agreement was lawfully terminated, Aho was under no further obligation to sell the house to Melnik. HBE joined Aho's arguments and also asserted that it was not a party to the EMA. HBE also argued that Melnik could not establish the unfair and deceptive element or the public interest element of the CPA claim. Melnik opposed summary judgment and in the alternative moved for a continuance under CR 56(f) to depose Dallas Aho and Aho construction.

The trial court granted Aho and HBE's motions for summary judgment. Melnik appeals.

### II     ANALYSIS

### A     Standard of Review

We review summary judgment orders de novo and perform the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). We view all facts and reasonable inferences in the light most favorable to the nonmoving party—in this case, Melnik. Owen, 153 Wn.2d at 787.

-4-

Summary judgment is proper if the record before the trial court establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

"A material fact is one of such nature that it affects the outcome of the litigation." Greater Harbor 2000 v. City of Seattle, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997). "If reasonable minds can differ, the question of fact is one for the trier of fact, and summary judgment is not appropriate." Owen, 153 Wn.2d at 788. But "bare assertions that a genuine material issue exists will not defeat a summary judgment motion in the absence of actual evidence." Trimble v. Wash. State Univ., 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

### B    Duty of Good Faith and Fair Dealing as to Aho

#### 1    Whether the EMA was terminated

Melnik argues that the trial court erred in granting summary judgment to Aho because there were triable issues of fact as to whether Aho breached its duty of good faith and fair dealing when it set a closing date, terminated the EMA, and then sold the property to a third party before closing. We disagree.

An implied duty of good faith and fair dealing exists in every contract. Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). This duty "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." Badgett, 116 Wn.2d at 569. The duty of good faith and fair dealing requires only that the parties perform in good faith the obligations imposed by their agreement. See Barrett v. Weyerhaeuser Co. Severance Pay Plan, 40 Wn. App. 630, 635-36 n.6, 700 P.2d 338 (1985). The duty of good faith and fair dealing does not inject

substantive terms into the parties' contract or create a free-floating duty of good faith unattached to the underlying legal document. Badgett, 116 Wn.2d at 569-70.

The EMA provided that Aho must notify Melnik, through his lender, of the scheduled competition date and/or of the issuance of the occupancy permit. The EMA also provided that the later of the scheduled completion date or the occupancy issuance date was the closing date. The EMA also provided that if Melnik did not provide the funding within three days of the closing date, then Aho had the power to terminate the agreement. Lastly, the EMA provided that any extensions to the agreement must be provided in writing by Aho and that there would be a carrying charge of $50 per day for any extension.

Aho sent a letter to Melnik on June 10, 2021, notifying him that closing was scheduled for September 14, 2021. On September 8, 2021, Aho notified Melnik's lender, Geoff Kane, of the certificate of occupancy. Therefore, based on the plain language of the EMA, the closing date was the later of the scheduled completion date or the occupancy issue date. Per the June e-mail, the closing date was set for September 14, 2021, and the three-day grace period was September 17, 2021. The certificate of occupancy was set on September 8, 2021. Therefore, the closing date was no later than September 17, 2021, to account for the three-day grace period. After this, the EMA provides that Aho may terminate the agreement without any further notice.

Contrary to Melnik's assertions, there was no bad faith in Aho's actions in setting a closing date. The EMA is clear and Aho followed the terms. Melnik had notice in June that the closing date was in September. The June letter reminded Melnik that he needed to secure financing before the closing date. Melnik was unable to secure the

funding by the closing date because he failed to timely provide documents to his lender. This was at no fault of Aho. Melnik does not present legal authority or argument to support his assertion that setting a closing date was in bad faith. Melnik had ample notice of the closing date and Aho followed the procedures to terminate the agreement.

### 2     Whether the EMA was revived or extended

Melnik argues that even if the contract was terminated, the EMA was extended through the conduct of HBE and Aho. Specifically, Melnik argues that HBE's statements and actions caused the EMA to not be terminated or that it was revived. In response, Aho argues that there is insufficient evidence to constitute a written agreement to extend the EMA. We agree with Aho.

"[E]arnest money agreements," are contracts "whereby essentially an owner promises to convey, and the purchaser to pay . . . for real estate." Geonerco, Inc. v. Grand Ridge Props. IV LLC, 146 Wn. App. 459, 465, 191 P.3d 76 (2008) (alteration in original) (quoting 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 16.1, at 215 (2d ed. 2004)). These agreements do not convey title but are promises to convey title in the future. Geonerco, 146 Wn. App. at 465. Additionally, "[a] provision in an agreement making time of the essence is generally treated as evidence of a mutual intent that specified times of performance be strictly enforced." Mid-Town Ltd. P'ship v. Preston, 69 Wn. App. 227, 233, 848 P.2d 227 (1993).

The statute of frauds requires that earnest money agreements contain "a description of the land sufficiently definite to locate it without recourse to oral testimony." Geonerco, 146 Wn. App. at 465-66 (quoting Key Design, Inc. v. Moser, 138 Wn.2d 875,

881, 983 P.2d 653 (1999)).  If the earnest money agreement has an inadequate legal description of the property, then it is void as violative of the statute of frauds.  Geonerco, 146 Wn. App. at 466.

An agency relationship exists when the facts, either expressly or impliedly, demonstrate "that one person is acting at the instance of and in some material degree under the direction and control of the other."  Matsumura v. Eilert, 74 Wn.2d 362, 368, 444 P.2d 806 (1968).  "It arises from manifestations that one party consents that another shall act on his behalf and subject to his control, and corresponding manifestations of consent by another party to act on behalf of and subject to the control of the other."  Matsumura, 74 Wn.2d at 368 (citing RESTATEMENT (SECOND) OF AGENCY § 1 (A.L.I. 1958)).  The burden of establishing the agency relationship rests on the party asserting its existence.  Hewson Constr., Inc. v. Reintree Corp., 101 Wn.2d 819, 823, 685 P.2d 1062 (1984).

An agent can bind a principle with either actual or apparent authority.  King v. Rivelund, 125 Wn.2d 500, 507, 886 P.2d 160 (1994).  An agent has apparent authority to act for a principal only when the principal makes objective manifestations of the agent's authority to a third person.  Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 555, 192 P.3d 886 (2008).  A principal's objective manifestations create apparent authority when they cause the third person to subjectively believe that the agent has authority to act for a principal and that belief is objectively reasonable.  Ranger, 164 Wn.2d at 555.

Melnik relies on two e-mails to demonstrate that HBE extended or revived the EMA.  The first is on September 21, 2021, HBE escrow manager Autrey wrote an e-mail

to Northpointe Bank stating: "Can I get an update, please? I need to update the seller. This borrower is way past their closing date so the $50 per day penalty has kicked in as per yesterday." The next e-mail Melnik relies on from Autrey is on September 27, 2021, where Autrey forwarded documents she held in escrow, including copies of the signed EMA, earnest money deposit, certificate of occupancy, tax assessment, and wire instructions. Autrey was forwarding the documents to Eric Larson of NW Private Lending, where Melnik was trying to obtain the hard money loan.

First, we must determine whether HBE was acting as an agent of Aho and could have extended the contract. We conclude HBE was not an agent acting with either actual or apparent authority. First, HBE was an escrow agent to the transaction. There is no evidence that HBE was acting under the control of Aho. Second, there is no evidence that Aho made any objective manifestations that HBE was Aho's agent and had authority to bind Aho into contracts. In fact, Melnik complains that Aho and HBE never disclosed that the companies were under common ownership. Therefore, he cannot also argue that HBE was acting as an agent of Aho because of how it presented itself.

Additionally, even if HBE was an agent, there is no agreement that could satisfy the statute of frauds that would operate as extending or reviving the EMA. Autrey, at HBE, referred to a closing date of September 30. But she was not a party to the contract. Even if she had authority, this evidence is insufficient to demonstrate that she extended the contract. The EMA provided that any extension of the closing date needed to be in writing by the seller. Autrey referring to the closing date or late fees is insufficient to conclude that the contract was revived.

Melnik argues that Aho's conduct could have revived or extended the EMA. Melnik acknowledges that he received a letter from Aho terminating the EMA and enclosing a check refunding Melnik's deposit. According to Melnik, when he received the letter and check, he went to Aho's office to disclose his intent to close on the property. According to Melnik, in that discussion, Dallas Aho agreed to extend closing to September 30 and told Melnik not to deposit the refund check. Melnik asserts that he did not deposit the check, effectively tendering the earnest money a second time.

Even when viewed in the light most favorable to Melnik, no evidence establishes an issue of material fact. Even if all those facts were true, there is still no written agreement to extend the EMA. As discussed, to satisfy the statute of frauds for the conveyance of real property, there needs to be a written agreement. Any oral agreement to extend the EMA is invalid. Melnik also presents no authority to establish that because he did not deposit the earnest money refund, he effectively tendered the money for a new agreement.

For all those reasons, the trial court did not err when it dismissed Melnik's claim for the breach of duty of good faith and fair dealing against Aho. Aho properly terminated the EMA and notified Melnik of the termination and returned his money. There is no basis to conclude that the EMA was extended or revived by the actions of Aho or HBE.

### C     Duty of Good Faith and Fair Dealing as to HBE

Melnik argues that the trial court erred in granting summary judgment to HBE because there were triable issues as to whether HBE failed to make required disclosures and failed to inform Melnik that HBE could not close the transaction unless

and until his wife quitclaimed her interest. Because there was no contract between HBE and Melnik, we disagree.

Melnik relies on Poulsbo Grp., LLC v. Talon Dev., LLC, 155 Wn. App. 339, 229 P.3d 906 (2010). There, the defendant Talon began subdivision on a plat. At the same time, Snowberry Enterprises was developing a neighboring plat, including construction of a number of water, sewer, and street improvements. Poulsbo, 155 Wn. App. at 342. Talon and Snowberry communicated on multiple occasions about the possibility of sharing the cost of Snowberry's development improvements that could benefit Talon's property, but they did not reach an agreement to share costs and Snowberry moved forward with the utility improvements. Poulsbo, 155 Wn. App. at 342.

Later, Talon and Poulsbo Group entered into a vacant land purchase and sale agreement for the future development. Poulsbo, 155 Wn. App. at 342-43. An optional addendum required Talon to disclose all documents related to the property and required Talon to verify the suitability of the property for Poulsbo's purposes. Talon also affirmatively answered "no" to whether there were any boundary disputes or claims between neighboring properties and whether there were any pending assessments. Poulsbo, 155 Wn. App. at 343-44.

Before the preliminary plat approval, the City held a hearing where Snowberry testified that it wanted a condition on the plat approval requiring Talon to participate in a latecomer agreement, allowing Snowberry to recover some of the costs for the utility improvements. Poulsbo, 155 Wn. App. at 344. After the Poulsbo purchase closed, it learned about the latecomer agreement assessment. Poulsbo sued Talon for breach of contract and breach of duty of good faith and fair dealing. Poulsbo, 155 Wn. App. at

345. On appeal, the court held there were triable issue of fact as to whether Talon's statements were in bad faith. Poulsbo, 155 Wn. App. at 347.

First, unlike Poulsbo, HBE is not a party to the contract between Aho and Melnik. Second, Poulsbo concerned the concealment of relevant information that the plaintiff requested. Here, there is no evidence that HBE provided Melnik with false information. Melnik's lender at Northpointe Bank was notified that a quitclaim deed would be necessary in March 2021. There was ample notice that Melnik needed his wife to quitclaim the deed. Therefore, even if there was a contract between HBE and Melnik, there is no breach of the duty of good faith and fair dealing. There was no intentional concealment or the affirmative disclosure of false information. The EMA was between Melnik and Aho and merely listed HBE as the escrow agent for the transaction. There can be no breach of the duty of good faith and fair dealing if there is no contract.

For those reasons, the trial court did not err when it dismissed the claim for breach of the duty of good faith and fair dealing as to HBE.

### D    CPA Claims

Melnik argues that the trial court erred in granting summary judgment to Aho and HBE on the CPA claims. We disagree.

Washington's CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. The plaintiff must prove "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

As discussed, the EMA expressly gave Aho the right to terminate the agreement if Melnik was more than three days late funding the closing. Aho did not terminate the agreement until a week after the closing date and Melnik still did not have the funds. Moreover, Aho reminded Melnik in June that he would need to secure all funding by the closing date. Melnik did not secure funding at no fault of HBE or Aho. There is nothing deceptive about a seller terminating an agreement for a home sale when the buyer does not secure the loans to fund the sale.

Then, after the EMA was properly terminated, Aho was under no obligation to sell the house and there was no deceptive or unfair conduct. Therefore, to the extent that Melnik's CPA claim relies on the period after September 21, 2021, where there was no obligation on Aho to sell the home to Melnik, there was no violation of the CPA.

Relating to HBE, Melnik asserts that HBE engaged in deceptive conduct by failing to disclose that his wife needed to sign the quitclaim deed to close the sale. First, HBE notified Melnik through his lender that a quitclaim deed would be necessary. Second, again, this is not relevant because the EMA was already terminated. There was no valid agreement to sell the home.

Lastly, to the extent that Melnik asserts that it was deceptive that HBE and Aho did not disclose that there was common ownership between the companies, it is irrelevant because Melnik fails to show how he was harmed. There was no injury from the deceptiveness of the shared ownership. The ownership did not relate to the termination of the EMA.

For those reasons, the trial court did not err in dismissing the CPA claims.

E    Continuance

Melnik argues that the trial court erred in denying his motion for a continuance. We disagree.

A court has authority to continue a hearing on a motion for summary judgment when the party opposing summary judgment demonstrates that it cannot present affidavits to support its opposition. CR 56(f). A court may deny a motion for continuance when the party opposing summary judgment: (1) does not have a good reason for the delay in obtaining evidence, (2) does not indicate what evidence would be established by additional discovery, or (3) the evidence does not raise a genuine issue of material fact. Modumetal, Inc. v. Xtalic Corp., 4 Wn. App. 2d 810, 832, 425 P.3d 871 (2018). A court can deny a continuance if "[o]nly one of the qualifying grounds" are met. Gross v. Sunding, 139 Wn. App. 54, 68, 161 P.3d 380 (2007). This court reviews a trial court's decision on a request to continue a summary judgment hearing for an abuse of discretion. Modumetal, 4 Wn. App. 2d at 832. A court abuses its discretion when its decision is based on untenable or unreasonable grounds. Modumetal, 4 Wn. App. 2d at 832.

Melnik requested a continuance to depose Dallas Aho and Aho construction. But as Aho argues, even assuming that Dallas Aho did orally agree to extend the closing date, this would not change the outcome of the case. The EMA provides that any extension of the closing date must be provided in writing by Aho. Second, any oral agreement with Dallas violated the statute of frauds because it concerned the sale of real property. Therefore, evidence about a conversation between Dallas Aho and

Melnik would not create a genuine issue of material fact. For that reason, the trial court did not err when it denied a continuance.

E     Attorney Fees

Melnik requests fees on appeal if he prevails. HBE argues that Melnik is not allowed to recover fees from it because HBE was not a party to the EMA. Alternatively, HBE asks that, if this court construes the EMA to include HBE, then it is entitled to fees under RAP 18.1 and section 18 of the agreement. Aho requests fees under RAP 18.1 and section 18 of the EMA.

RAP 18.1(a) authorizes attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." A party prevailing on appeal is entitled to "recover attorney fees authorized by statute, equitable principles, or agreement between the parties." Thompson v. Lennox, 151 Wn. App. 479, 484, 212 P.3d 597 (2009).

Section 18 of the EMA provides that the prevailing party should be awarded attorney fees from any litigation arising out of the contract. Accordingly, we award fees to Aho. Since HBE was not a party to the EMA, we decline to award fees to HBE. Lastly, because Melnik does not prevail on appeal, we decline his request for attorney fees.

We affirm.

_Mann, J._

WE CONCUR:

_Díaz, J._

_Coburn, J._